UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LUIS MENDEZ,

                              Plaintiff,

          v.                                                               9:21-CV-1090 (BKS/TWD)

BRIAN SCHENK, et al.,

                              Defendants.
_____

APPEARANCES:

LUIS MENDEZ
Plaintiff, pro se
05357-509
SANDSTONE FCI
Inmate Mail/Parcels
P.O. BOX 1000
SANDSTONE, MN 55072

BRENDA K. SANNES
Chief United States District Judge

**DECISION AND ORDER**

**I.   INTRODUCTION**

       In October, 2021, the Clerk received a pro se civil rights complaint for filing from plaintiff Luis Mendez asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983").  Dkt. No. 1.  Thereafter, plaintiff paid the filing fee for this action and submitted an updated pleading.  *See* Dkt. No. 11 ("Compl."); Docket Sheet.  By Decision and Order entered on January 19, 2022, the Court reviewed the updated pleading pursuant to 28 U.S.C. § 1915A(b), and found that it failed to state a claim upon which relief may be granted.  Dkt. No.

12 ("January 2022 Order").[1]  In light of plaintiff's pro se status, he was afforded an opportunity to submit an amended complaint if he wished to proceed with this action.  *Id*. at 22-24.  Plaintiff was specifically advised that his failure to comply with the January 2022 Order within thirty days would result in dismissal of this action.  *Id*.

Following extensions of plaintiff's amended pleading deadline and the return of certain mail as undeliverable, the Court issued a Decision and Order on April 20, 2022, which dismissed the action without prejudice pursuant to 28 U.S.C.§ 1915A(b)(1), Rule 41(b) of the Federal Rules of Civil Procedure, and Northern District of New York Local Rule 41.2(b), and directed the Clerk to close this case.  Dkt. No. 22 ("April 2022 Order").  That same day, judgment was entered dismissing this action.  Dkt. No. 23 ("Judgment").  Both the April 2022 Order and the Judgement were returned to the Court as undeliverable.  *See* Dkt. No. 24.

On September 8, 2022, the Court received a letter from plaintiff's friend or relative, which provided a new address for plaintiff, and requested an update on this case.  Dkt. No. 25.  In light of this submission, the Clerk sent a copy of the April 2022 Order and the Judgement to plaintiff at this new address.  Shortly thereafter, plaintiff filed a letter request that this action be re-opened.  *See* Dkt. No. 26.

By Decision and Order entered on October 5, 2022, the Court granted plaintiff's request to vacate the Judgment and afforded him a final opportunity to file an amended complaint within thirty days.  Dkt. No. 27 ("October 2022 Order").[2]  Presently before the Court is plaintiff's amended complaint.  Dkt. No. 28 ("Am. Compl.").

---

[1] The procedural history of this case leading up to the January 2022 Order was discussed at length in that Order, and will not be restated herein.

[2] The full procedural history of this case following the January 2022 Order was discussed at length in the October 2022 Order.  *See* October 2022 Order at 1-3.

## II.     SUFFICIENCY OF THE AMENDED COMPLAINT

### A.     The Complaint and January 2022 Order

In his original complaint, plaintiff alleged that on December 29, 2020, while he was incarcerated at Cayuga County Jail as a federal pretrial detainee, he ingested "metal wire[,]" which was "cooked into" "a ground beef type meat" that was served to him for dinner. Compl. at 4-5.  Plaintiff further alleged that he suffered injuries that were not properly addressed by officials at Cayuga County Jail, and the doctor who evaluated him outside of the facility several weeks after this alleged incident.  *Id*. at 5-10.

The complaint was construed to assert medical indifference and retaliation claims against each of the named defendants in their individual and official capacities.  *See* January 2022 Order at 7.

As noted, following review of the complaint pursuant to 28 U.S.C. § 1915A(b), plaintiff's Section 1983 claims were dismissed for failure to state a claim upon which relief may be granted.  *See* January 2022 Order at 7-23.

### B.     Overview of the Amended Complaint

The allegations in the amended complaint are similar to, albeit less detailed than, the allegations in the original complaint.  *Compare* Compl. *with* Am. Compl.  Indeed, there are only two material differences between the original and amended complaint.  First, unlike the original complaint, which named only employees of Cayuga County Jail and a treating physician as defendants, the caption of the amended complaint names the United States of America as the only defendant, and the body of the pleading asserts Section 1983 claims against only Cayuga County Jail.  *See generally*, Am. Compl.  Second, the amended complaint alleges that Corrections Sergeant Marvintino (named as a defendant in the original

3

complaint) told plaintiff shortly after he ingested metal that arrangements would be made for his transport to a hospital, but thereafter advised plaintiff that "the hospitals were closed and no medical was present[.]"  Am. Compl. at 1-2.  As a result, plaintiff alleges that he experienced a delay in medical treatment.  *Id*. at 2.³

Liberally construed, the Court construes the amended complaint to assert a Section 1983 medical indifference claim against Cayuga County under the Due Process Clause of the Fifth Amendment,⁴ and a medical negligence claim against the United States of America pursuant to the Federal Tort Claims Act ("FTCA").

The amended complaint seeks money damages.  Am. Compl. at 2-3.  For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

**C.    Analysis**

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915A(b).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915A(b) was discussed at length in the January 2022 Order and it will not be restated in this Decision and Order.  *See* January 2022 Order at 2-3.

---

³ The nature of the alleged delay is unclear.  According to plaintiff, he received x-rays at Cayuga County Jail two days after the alleged incident, and was evaluated by a physician at a hospital "[a] month later."  Am. Compl. at 2.  However, documents attached to the original complaint show that plaintiff was taken for abdominal radiographs the morning after he allegedly swallowed metal material, and again a few days later.  Dkt. No. 2 at 1-2. In addition, plaintiff alleges in the original complaint that he spoke to a nurse the day after the alleged incident, and again less than two weeks later.  *See* Compl. at 7.

⁴ In *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit made clear that the standard governing conditions-of-confinement claims, which encompass claims for medical indifference, is the same whether brought by a state or federal pretrial detainee.  *Id*. at 21 n.3 ("This case implicates the Due Process Clause of the Fourteenth Amendment because it involves state pretrial detainees who are seeking to vindicate their constitutional rights. . . . However, the analysis in this decision should be equally applicable to claims brought by federal pretrial detainees pursuant to the Due Process Clause of the Fifth Amendment.").

### 1. United States of America

Insofar as the amended complaint names the United States of America as a defendant and asserts a medical negligence claim under the FTCA,[5] the government's waiver of sovereign immunity is for torts committed by its employees "under circumstances where the United States, if a private person, would be liable to the [plaintiff] in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The amended complaint is devoid of any allegations which plausibly suggest that any federal employee subjected plaintiff to wrongdoing.  Rather, plaintiff's claims are based on alleged wrongdoing at a county jail.

Furthermore, even assuming the federal government or one of its agencies contracted with Cayuga County for the provision of housing and safekeeping of federal prisoners or detainees, the Supreme Court long ago made clear that the definition of "federal agency" in the FTCA "does not include any contractor with the United States."  *Logue v. United States*, 412 U.S. 521, 526 (1973); *see also Carno*, 2019 WL 2287966, at *10 (dismissing FTCA claim against a federal agency based on allegations of wrongdoing at a county correctional facility in light of *Logue*, and collecting similar cases).  Thus, plaintiff cannot proceed with an FTCA claim against the federal government based on alleged wrongdoing by Cayuga County

---

[5]  Neither *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny nor Section 1983 allow claims for monetary damages against the United States, federal agencies, or federal agents in their official capacities.  *See Bivens*, 403 U.S. at 410; *Chapman v. Doe (One)*, No. 9:19-CV-1257 (GTS/CFH), 2019 WL 6493971, at *6-7 (N.D.N.Y. Dec. 3, 2019) (noting that *Bivens* does not "allow claims for monetary damages against the United States, federal agencies, or federal agents in their official capacities"); *Carno v. United States*, No. 17-CV-7998, 2019 WL 2287966, at *6 (S.D.N.Y. May 28, 2019) ("Under the Eleventh Amendment to the U.S. Constitution, the United States, as a sovereign, is immune from suits raising Constitutional violations." (citing U.S. Const. Amend. XI)).

and its employees.[6]

Accordingly, plaintiff's FTCA claim against the United States of America is dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Cayuga County

Because the original complaint asserted Section 1983 claims against various Cayuga County Jail employees in their official capacity, the Court construed the pleading to assert a municipal liability claim against Cayuga County, as the real party in interest. *See* January 2022 Order at 8. After doing so, the Court stated as follows with respect to the legal standard governing a municipal liability claim:

> Municipal liability is limited under Section 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*. In *Monell*, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los*

---

[6] Although exhaustion is an affirmative defense and need not be expressly plead in a complaint, it also bears mentioning that the FTCA requires a claimant to "present the claim to the appropriate federal agency . . . within two years of the date the claim accrued" before filing suit. *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013) (citing 28 U.S.C. § 2675(a)). "The claimant can only initiate his or her lawsuit once the claim has been denied by the agency (or if the agency has failed to make a decision within six months after the claim was filed)." *Id.* (citing 28 U.S.C. § 2675(a)). "In other words, the FTCA requires a plaintiff to exhaust all administrative remedies before filing suit in federal court." *Chapman v. Doe (One)*, No. 9:19-CV-1257 (GTS/CFH), 2019 WL 6493971, at *6-7 (N.D.N.Y. Dec. 3, 2019) (citing *Celestine v. Mount Vernon Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005)). Here, the amended complaint is devoid of allegations which plausibly suggest that plaintiff filed an administrative claim with any federal agency before commencing this action.

> *Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'a municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" (quoting *Monell*, 436 U.S. at 691)).

January 2022 Order at 9-10.

In dismissing plaintiff's municipal liability claim, the Court noted that the original complaint did not "include any allegations which plausibly suggest that any of the alleged wrongdoing carried out by any official occurred pursuant to a policy or custom of the county or jail." *See* January 2022 Order at 10.

As noted above, the amended complaint differs from the original complaint in that plaintiff now alleges that at some point after he ingested metal material and was told by Corrections Sergeant Marvintino that arrangements would be made for his transport to a hospital, Corrections Sergeant Marvintino thereafter advised plaintiff that he could not receive emergency medical treatment because "the hospitals were closed and no medical was present[.]" Am. Compl. at 1-2. At this stage of the proceeding, it is at least plausible to infer from these allegations (and the allegations regarding plaintiff's injuries and pain) that plaintiff (1) was suffering from an objectively serious medical condition after allegedly ingesting a "metal object", and (2) did not receive emergency medical treatment because Cayuga County Jail did not have protocols in place to ensure the availability of such treatment (either through seeing a provider at the facility, or being transported to an outside hospital). In drawing these inferences, the Court reiterates that the extent of the delay in medical treatment that plaintiff experienced is unclear, and may have been less than twelve hours. Nonetheless, at this early stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed*

7

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's medical indifference claim against Cayuga County based on a delay in medical treatment survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.[7]

## III.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the Clerk is directed to add Cayuga County to the docket as a defendant; and it is further

**ORDERED** that plaintiff's Section 1983 medical indifference claim against Cayuga County **SURVIVES** sua sponte review and requires a response; and it is further

**ORDERED** that all remaining federal claims are **DISMISSED** pursuant to 28 U.S.C. §

---

[7] The amended complaint lacks allegations which plausibly suggest that either of the corrections officials who responded to plaintiff's complaints of pain after ingesting a piece of metal (1) caused the delay in treatment, and (2) did so out of deliberate indifference to plaintiff's serious medical needs. To the contrary, the allegations in the amended complaint plausibly suggest that after plaintiff ingested the "metal object" (1) Corrections Officer Cowen responded to his request for assistance and contacted a superior officer, Corrections Sergeant Marvintino, and (2) Corrections Sergeant Marvintino documented plaintiff's injuries and attempted to secure his transport to an outside hospital. *See* Am. Compl. at 1-2. Furthermore, plaintiff has not alleged that any prison officials were responsible for preparing his food, had previously threatened him in any respect, or had reason to know that there might be a "metal object" in his food (even though plaintiff was not aware of this fact), and the allegations in the original complaint indicate that plaintiff refused a medical procedure on March 22, 2021, before Nurse Brittany witnessed (and documented) him spitting up blood. *See* Compl. at 8-9. Thus, even assuming plaintiff was suffering from an objectively serious medical condition after allegedly ingesting metal, the Court has no basis to plausibly infer from the allegations in the amended complaint that any officials working at the jail acted with deliberate indifference to his serious medical needs. *See, e.g., Gray v. Metro. Det. Ctr.,* No. 09-CV-4520, 2011 WL 2847430, at *10 (E.D.N.Y. July 15, 2011) (dismissing medical indifference claim under *Bivens* based on corrections officials "(1) serving [the inmate] food containing glass fragments; and (2) delaying the provision of medical care, resulting in severe pain and the loss of a tooth[,]" noting that the plaintiff failed to allege that these officials "personally put glass in his food or had any reason to know that his food was contaminated when it was served[,]" or "had any personal involvement in plaintiff's medical care or his failure to obtain an x-ray or other medical treatment"). Of course, plaintiff is free to seek leave to amend his pleading if he believes otherwise.

8

1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue a summons and forward it, along with a copy of the amended complaint, to the United States Marshal for service upon Cayuga County.  The Clerk shall forward a copy of the summons and amended complaint by mail to the Cayuga County Attorney's Office, together with a copy of this Decision and Order; and it is further

**ORDERED** that upon the completion of service, a response to plaintiff's amended complaint be filed by Cayuga County, or its counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

9

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff, along with a copy of the Local Rules of Practice for this District.

**IT IS SO ORDERED.**

Dated: December 16, 2022
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge