**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LUIS MENDEZ,

                                   Plaintiff,                           9:21-cv-1090
                                                                         (BKS/TWD)

v.

CAYUGA COUNTY,

                                     Defendant.

---

**Appearances:**

*Plaintiff pro se:*
Luis Mendez
05357-509
FCI Sandstone
P.O. BOX 1000
Sandstone, MN 55072

*For Defendant:*
Judith B. Aumand
Burke, Scolamiero Law Firm
7 Washington Square
Albany, NY 12205

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.       INTRODUCTION

Plaintiff Luis Mendez commenced this civil rights action asserting claims under 42

U.S.C. § 1983 ("Section 1983") arising out of his incarceration at the Cayuga County Jail as a

federal pretrial detainee. (Dkt. No. 11).  Following this Court's review of the complaint pursuant

to 28 U.S.C. § 1915A, plaintiff filed an amended complaint. (Dkt. No. 28).  On May 1, 2023,

Defendant Cayuga County filed a motion to dismiss the amended complaint under Fed. R. Civ.

P. 12(b)(6) for failure to state a claim. (Dkt. No. 34).  Plaintiff did not oppose the motion.  This

matter was assigned to United States Magistrate Judge Thérèse Wiley Dancks who, on February 1, 2024, issued a Report-Recommendation and Order recommending that Defendant's motion to dismiss be granted, and that Plaintiff's Section 1983 medical indifference claim against Cayuga County – the only claim remaining in the action – be dismissed without prejudice and with leave to amend.  (Dkt. No. 43 ["Report-Recommendation"], at 15).  Magistrate Judge Dancks advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.*).  No objections to the Report-Recommendation have been filed. Instead, the Court has received the following from Plaintiff: (1) a second amended complaint, Dkt. No. 47 ("SAC"); and (2) a motion for appointment of counsel, Dkt. No. 48 ("Motion for Counsel").

## II.    MOTION TO DISMISS

As no objection to the Report-Recommendation has been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.  Having reviewed the Report-Recommendation for clear error and found none, the Report-Recommendation is adopted in its entirety.

Accordingly, the motion to dismiss is granted.

## III.    SUFFICIENCY OF THE SECOND AMENDED COMPLAINT

### A.  Relevant Legal Standard

Because Plaintiff is an inmate suing one or more government employees, his second amended complaint must be reviewed in accordance with 28 U.S.C. § 1915A(b). The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915A(b) was discussed at

length in the Court's Decision and Order entered on January 19, 2022, and it will not be restated herein.  *See* Dkt. No. 12 ("January 2022 Order") at 2-3.

### B.  Overview of the Amended Complaint and Report-Recommendation

Plaintiff's amended complaint alleged that on December 29, 2020, he ingested "a large piece of metal wire" served in his food, and thereafter experienced a delay in medical treatment. (Dkt. No. 28).  By Decision and Order entered on December 12, 2022, this Court liberally construed the allegations in the amended complaint to assert a medical indifference claim against Cayuga County.  (Dkt. No. 29, at 3-4).

In recommending dismissal of Plaintiff's medical indifference claim against Cayuga County, Judge Dancks discussed the legal standard governing Section 1983 claims for municipal liability and noted that the amended complaint failed to identify (1) any formal policy of Cayuga County that delayed Plaintiff's access to medical treatment, (2) a persistent and widespread practice of denying detainees access to emergency medical treatment, (3) wrongdoing by policymaking individuals that resulted in the alleged delay in treatment, or (4) a failure by policymakers to provide adequate training or supervision to subordinates.  *See* Report-Recommendation at 12-13.

### C.  Overview of the Second Amended Complaint

The allegations in the second amended complaint are materially similar to, albeit less detailed than, the allegations in Plaintiff's prior pleadings.  The following facts are set forth as alleged in the second amended complaint.

During Plaintiff's confinement at Cayuga County Jail, he was "provided a meal that contained a 'piece of metal[,]'" which he ingested.  SAC at 1.  "When Plaintiff brought his concerns to the jail officials[,] they acknowledged his medical condition," but "opted to delay

emergent medical care." *Id*. "This delay resulted in serious adverse effects to Plaintiff's health[.]" *Id*. According to Plaintiff, the delay in emergency medical treatment occurred as a result of Cayuga County not having a "policy or regulation" for handling medical emergencies, which resulted in jail officials not knowing how to properly respond to Plaintiff's situation. *See* SAC at 1.

The Court liberally construes the allegations in the second amended complaint to assert a medical indifference claim against Cayuga County, the only named defendant.[1]

**D.  Analysis**

Municipal liability is limited under Section 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*. In *Monell*, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe*, 351 Fed. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality

---

[1]  As noted in the January 2022 Order, "a municipality may not be liable on the basis of respondeat superior." *See* January 2022 Order at 10 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Moreover, the second amended complaint does not allege that one or more Cayuga County Jail officials placed metal inside of Plaintiff's food, or that this occurred pursuant to a custom or policy of Cayuga County, or as a result of inaction by policymakers to a "pattern of misconduct" involving food contamination. *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (noting that *Monell* liability may exist "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions"). Thus, the Court does not construe the second amended complaint to assert a Section 1983 claim against Cayuga County based on the metal object contained within Plaintiff's food.

cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" (quoting *Monell*, 436 U.S. at 691)); *Sims v. City of New York*, No. 15-CV-2485, 2018 WL 11605048, at *4 (S.D.N.Y. Dec. 17, 2018) ("*Monell* . . . does not conclude that plaintiffs may hold municipalities liable under separate causes of action—there must be an underlying constitutional violation that occurred because of the municipality's unconstitutional custom or policy. . . . When there is no underlying constitutional violation, therefore, there can be no municipal liability under *Monell*." (citing, *inter alia*, *Segal*, 459 F.3d at 219)), *aff'd*, 788 Fed. App'x 62 (2d Cir. 2019).

The existence of a municipal policy or custom may be plead in any of four ways: "(1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks omitted) (citing *Deferio v. City of Syracuse*, 770 Fed. App'x 587, 589 (2d Cir. 2019) (summary order)). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 Fed. App'x at 590 (2d Cir. 2019) (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). "Boilerplate statements" that county employees were acting in accord with a

municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim. *See Brown v. Oneida Cnty.*, No. 6:15-CV-0849, 2016 WL 4275727, at *4 (N.D.N.Y. Aug. 12, 2016).

As with the original and amended complaints, the second amended complaint does not identify a policy that resulted in Plaintiff's lack of access to emergency medical treatment. Indeed, the second amended complaint is devoid of allegations which plausibly suggest that at the time of Plaintiff's injuries, Cayuga County imposed any type of restriction on detainee access to medical treatment, the jail's access to outside hospitals, or the services necessary to facilitate such access.

Instead, Plaintiff alleges, for the first time, that he experienced a delay in medical treatment after ingesting metal as a result of the *absence* of a policy informing officials at the Cayuga County Jail how to respond to a medical emergency. *See* SAC.  In other words, according to Plaintiff, the delay in medical treatment that he experienced was as a result of Cayuga County's failure to prepare for, and train officials on, medical emergencies.[2]  Thus, the Court focuses its analysis herein on whether Plaintiff has adequately alleged the existence of a municipal policy, for purposes of municipal liability, through either (1) "widespread and consistent" wrongdoing by subordinate officials related to the handling of medical emergencies, or (2) a failure by policymakers to train or supervise that amounts to deliberate indifference to Plaintiff's rights. *See Crawley*, 496 F. Supp. 3d at 729.

---

[2]  To be clear, the second amended complaint does not contain any allegations which plausibly suggest that Plaintiff did not receive medical treatment as a result of any sort of formal policy by Cayuga County, or the direct actions of any policymaker.

### 1.   Practices of Subordinate Officials

Insofar as the second amended complaint may be construed as attempting to assert a municipal policy through the wrongdoing of subordinate officials, as noted in the January 2022 Order, Plaintiff's underlying medical indifference claim must be analyzed under the pretrial detainee standard set forth in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017).  *See* January 2022 Order at 11-12 (citations omitted); *see also Bruno v. City of Schenectady*, 727 Fed. App'x 717, 720 (2d Cir. 2018).  To state a medical indifference claim under that standard, a pleading must allege (1) "an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and (2) "a subjective prong showing that the defendants acted with at least deliberate indifference to the challenged conditions." *Sims*, 788 Fed. App'x at 63 (internal quotation marks and alterations omitted).

"The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019).  "[W]here the allegations amount to a delay in medical treatment (rather than a complete deprivation of treatment), courts look at the particular risk of harm faced by an inmate due to the delay in treatment, rather than the severity of the inmate's underlying medical condition." *Robinson v. Broome Cnty. Sheriff*, No. 22-CV-0023 (GLS/CFH), 2022 WL 2914476, at *2 (N.D.N.Y. July 25, 2022) (citing, *inter alia*, *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)); *see also Benjamin v. Pillai*, 794 Fed. App'x 8, 11 (2d Cir. 2019) (distinguishing between cases where the prisoner is denied all medical care with those where the prisoner alleges a temporary delay or interruption in care).  With respect to the second prong, an official does not act with deliberate indifference "unless the official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition

posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'" *Bruno*, 727 F. App'x at 720 (emphasis omitted) (quoting *Darnell*, 849 F.3d at 35).

As a threshold matter, the second amended complaint fails to identify the nature or cause of the delay in Plaintiff's receipt of medical treatment after he ingested metal, or what treatment, if any, Plaintiff could have received sooner that may have improved his condition and/or alleviated his pain.[3]  Instead, Plaintiff vaguely alleges only that jail officials "conciencly [sic] and intentionally delayed" his access to medical care after becoming aware of his condition. SAC at 1.  Such conclusory allegations – particularly in light of the allegations in Plaintiff's prior pleadings – are insufficient to plausibly suggest either (1) that Plaintiff faced a serious risk of harm based on the delay in medical treatment that he experienced, or (2) that any official at the Cayuga County Jail acted with deliberate indifference to Plaintiff's medical needs.  *See, e.g., Charles*, 925 F.3d at 86 ("In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of [or delay in] treatment subjected the detainee to a significant risk of serious harm."); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 274 (N.D.N.Y. 2018) ("[The] [p]laintiff's conclusory allegation that [the defendant] refused to treat him or send him to a hospital fails to plausibly suggest that the defendant was deliberately indifferent to any serious medical need."); *Jimenez v. Sommer*, No. 14-CV-5166, 2017 WL 3268859, at *8 (S.D.N.Y. July 28, 2017) (holding "conclusory assertion" that the defendant "was aware of [the plaintiff's injury] but failed to recommend proper medical

---

[3] The original complaint alleged that Plaintiff ingested metal during his dinner meal on December 29, 2020, and was taken for abdominal radiographs at approximately 6:00 a.m. on December 30, 2020. Dkt. No. 2 at 1.  In addition, the amended complaint alleged that Plaintiff did not receive emergency medical treatment sooner because "the hospitals were closed and no medical was present[.]"  Am. Compl. at 1-2.  The second amended complaint does not repeat either of these factual allegations, let alone elaborate on them.

treatment" fails to "indicate that [the defendant] had the requisite culpable state of mind to satisfy the subjective prong of a deliberate[ ] indifference claim" (citation omitted) (collecting cases)).[4]  Accordingly, Plaintiff cannot state a claim against Cayuga County based on any alleged wrongdoing by subordinate officials.  *See Segal*, 459 F.3d at 219 ("Because the District Court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

Furthermore, even if the Court were to overlook the conclusory nature of Plaintiff's allegations of medical deliberate indifference, the second amended complaint is also devoid of any allegations which plausibly suggest that Plaintiff was denied medical treatment as part of a "pattern of misconduct."  *See Reynolds*, 506 F.3d at 192 (noting that *Monell* liability exists "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions").  In fact, the second amended complaint does not identify any past incidents in which other detainees at the Cayuga County Jail were denied emergency medical treatment. Nor does the pleading contain allegations which plausibly suggest that emergency medical treatment was repeatedly unavailable at certain times, or that transports to outside hospitals were prohibited or limited in some respect.  Rather, the second amended complaint identifies one incident of inadequate medical treatment – the incident involving Plaintiff.  Thus, the Court has no basis to plausibly infer from the allegations in the second amended complaint that at the time of Plaintiff's injuries, Cayuga County officials were aware of "widespread and consistent"

---

[4]  Based on the allegations in Plaintiff's original and amended complaints, which, again, Plaintiff has not repeated or corrected in his second amended complaint, the Court can only infer that (1) he experienced a delay in emergency medical of approximately twelve hours based on circumstances outside the control of jail officials working at the time, and (2) his treatment initially consisted of examining the metal within his body – through a radiograph – after it was fully digested.

deliberate indifference by jail officials to the emergency medical needs of detainees such that the alleged failure to adequately respond to Plaintiff's medical needs may be considered a policy choice by Cayuga County.  *See Reynolds*, 506 F.3d at 192; *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) ("[I]nherent in the principle that a municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation, is the concept that the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *Wilson v. Cnty. of Ulster*, No. 1:20-CV-00104, 2022 WL 813958, at *16 (N.D.N.Y. Mar. 17, 2022) (noting, where a municipal liability claim was asserted based on an isolated incident, that "Plaintiff's conclusory allegation that a policy should be inferred because the 'flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the Town and County of Ulster,' . . . is insufficient."); *Maloney v. Cnty. of Nassau*, 623 F. Supp. 2d 277, 289-90 (E.D.N.Y. 2007) ("[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker.").

### 2.  Failure-to-Train

As the Second Circuit has explained, a municipality's "failure to train its subordinates satisfies the policy or custom requirement" under *Monell* "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds*, 506 F.3d at 192 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Once again, as a threshold matter, Plaintiff has failed to adequately allege that he suffered an underlying violation of his Fourteenth Amendment rights in connection with the delay in emergency medical treatment that he experienced.  For this reason alone, Plaintiff has failed to state a municipal liability claim against Cayuga County.  *See Segal*, 459 F.3d at 219.

Furthermore, setting aside the conclusory nature of Plaintiff's allegations of medical deliberate indifference, the second amended complaint also does not identify the jail's practice of responding to medical emergencies at the time of Plaintiff's injuries, let alone explain how it should have been obvious to a policymaker that the practice would result in Plaintiff's receipt of inadequate medical treatment.  *See Reynolds*, 506 F.3d at 192.  In addition, the second amended complaint does not allege what type of training may have resulted in Plaintiff's receipt of different (or more immediate) medical treatment, or how the absence of such training resulted in a deprivation of his federal rights.  *See Amberslie v. Prisoner Transp. Serv. of Am., LLC*, No. 9:17-CV-0564 (TJM/DEP), 2019 WL 1024183, at *15 (N.D.N.Y. Mar. 4, 2019) ("Plaintiff contends that defendant's employees do not receive training in 'medical and mental health education,' which would plaintiff alleges would 'prevent[ the] deprivation of life, [and] minimize[ ] the risk of injuries' suffered by prisoners during transport. . . . Yet, plaintiff has not pleaded any facts with respect to how this alleged failure to train resulted in a deprivation of plaintiff's rights."), *report and recommendation adopted by* 2019 WL 1368860 (N.D.N.Y. Mar. 26, 2019).  Thus, the Court also has no basis to plausibly infer from the allegations in the second amended complaint that Plaintiff suffered a denial of emergency medical treatment as a result of a failure by policymakers to train or supervise subordinate officials regarding how to respond to Plaintiff's situation.

In light of the foregoing, Plaintiff's medical indifference claim against Cayuga County is once again dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV.    NATURE OF THE DISMISSAL

Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend.  *Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on de novo review, Report-Recommendation by Lowe, M.J.) ("Of course, granting a pro se plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 Fed. App'x 388 (2d Cir. 2009*); accord, Shuler v. Brown*, No. 07-CV-0937, 2009 WL 790973, at *5 & n. 25 (N.D.N.Y. Mar. 23, 2009) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.), *Smith v. Fischer*, No. 07-CV-1264, 2009 WL 632890, at *5 & n. 20 (N.D.N.Y. Mar. 9, 2009) (Hurd, J., adopting Report-Recommendation by Lowe, M.J.).[5]

Moreover, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. Indeed, as the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted*), accord, Brown v.*

---

[5]  *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend was not an abuse of discretion where movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC*, 375 Fed. App'x 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend.").

*Peters*, No. 6:95-CV-1641 (RSP/DS), 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted). This rule applies even to pro se plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355, at *1.

Although Plaintiff was afforded another opportunity to amend his pleading, he failed to cure the deficiencies identified in the Report-Recommendation. In fact, Plaintiff's pleading is even more vague than his earlier pleadings, particularly as it relates to alleged inadequacies with the medical treatment that he received, and the timing of such treatment. Furthermore, Plaintiff's deficient pleading comes on the heels of his failure to oppose the motion to dismiss. Thus, the Court is not convinced that allowing Plaintiff to amend his pleading for a third time is likely to be productive.

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## V.    MOTION FOR COUNSEL

In light of the dismissal of this action, Plaintiff's Motion for Counsel is denied as moot.

## VI.    CONCLUSION

In light of the foregoing, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 43) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 34) the amended complaint (Dkt. No. 28) is **GRANTED**; and it is further

**ORDERED** that any and all federal claims asserted in the second amended complaint (Dkt. No. 47) are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, as set forth above; and it is further

**ORDERED** that Plaintiff's Motion for Counsel (Dkt. No. 48) is **DENIED as moot**; and the Clerk is directed to close this case and enter Judgment; and it is further

**ORDERED** that the Clerk shall provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam), and serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>March 25, 2024</u>
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

14